# WILLIAMS *v.* TAPPAN.

Where a statute declares, that shingles offered for sale without being surveyed shall be forfeited, it must be proved, in order to avoid a contract of sale, that they were illegally offered for sale. Such offer to sell will not be inferred from proof of a sale merely.

Payments after action brought may be given in evidence in reduction of damages under the general issue; but not in bar of the action.

They may be specially pleaded in bar of the further maintenance of the action or given in evidence under a notice to that effect.

ASSUMPSIT on an account annexed to the writ. The item of

charge chiefly in dispute, was " 7000 sawed cedar shingles at
$1.75 per M., $12.25." It appeared, that the shingles were
sold at Newburyport, in Massachusetts. They were made in
Maine, and imported from Bangor. There was no evidence,
that they had been surveyed or branded, according to the laws
of Massachusetts. And there was evidence introduced on the
part of· the defendant, tending to prove that there were no
brands or surveyor's marks upon the bundles of shingles ; that·
they were not fifteen inches in length, but were short, shaky,
worm-eaten and full of holes, and· many of them not fit to lay
on the roof of a building.

On the part of the defendant, it was contended that the sale·
was illegal in Massachusetts, and the contract of course could
not be enforced here. It was shown, that the statute of that
State, (Mass. Rev. Stat., ch. 28, § 158,) provided that, " All shin-
gles made in this State, or offered for sale, shall be from fifteen
to eighteen inches in length, and may be sawed or shaven ; they
shall be free from shakes and worm-holes ; and-shall be half an
inch thick at the butt when green, and full three-eighths of an·
inch when thoroughly seasoned, if for exportation to a foreign.
market, and not less than one-third of an inch thick at the butt,
when fully seasoned, if for home use, and four inches and a half
wide on an average, and none less than three inches wide, and to·
hold their width three-fourths of the way to the thin end. And;
before any shingles are sent from the town where they are made,
or at the place of first sale before their delivery, they shall be
viewed, surveyed and measured by a sworn surveyor, and the
town brand put upon the hoop of the bundle. All shingles
offered for sale, without being surveyed and marked as afore-
said, shall be forfeited to the use of the town where they shall
be so offered for sale."

The court ruled that as the sale of shingles, not surveyed or
branded, was not in terms prohibited, nor any penalty imposed
upon either party to the sale, the contract was not illegal and
the price might be recovered.

The defendant had annexed to his plea of the general issue, a
notice that after the suit was brought, and before the entry of

the action, he tendered to the plaintiff's attorney, a certain less sum in full for the amount claimed, and that the said attorney accepted and received it, (not saying in full.)

The plaintiff objected, and the court ruled, that the notice was not admissible after ninety days from the first continuance, except by order of court, which was not asked. The defendant contended, that such tender, authorized by statute, could be given in evidence under the general issue without notice or special plea. But the court held, that neither tender, nor payment after action brought, could be shown in bar without a plea in bar of the further maintenance of the action, or a notice with the general issue to the same effect; though such payment might be shown in reduction of damages. The defendant excepted, and moved to set aside the verdict found by the jury for the amount claimed by the plaintiff, after deducting the amount paid to the plaintiff's attorney.

*Stanyan* for the plaintiff.

*Marston* for the defendant.

By the Mass. Rev. Stat., ch. 28, §§ 157, 158, 159, the sale of shingles, either not surveyed and marked, or not of the statute dimensions and quality, is prohibited, in each case, under penalty of forfeiture.

The shingles in question were not surveyed or marked, and were not of the statute dimensions or quality.

1. The validity of a contract for the sale of personal property, depends upon the law of the place where it is made. Story Con. of Laws, § 242; *Sessions* v. *Little*, 9 N. H. Rep., 271; *French* v. *Hall*, 9 N. H. Rep., 137.

2. No right can be acquired from any agreement, made in express opposition to the laws of the place, where it is made. *Hall* v. *Mullin*, 5 Har. & Johns, 193.

3. Where the contract is entire, if part of the consideration is against law, the whole contract is void. *Carlton* v. *Whitcher*, 5 N. H. Rep., 196.

4. When an express or implied contract is expressly or by

implication forbidden by the common or statute law, no action can be sustained upon it. *Cape* v. *Rawland*, 2 M. & W., 157 ; *Bensley* v. *Bignold*, 5 B. & A., 335, — where it was held that not following a direction was equivalent to disobeying a prohibition. Also *Law* v. *Hodsdon*, 11 East, 300 ; *Cundel* v. *Dawson*, 4 M. G. & S., 376, (56 C. L., 375,) where the authorities are reviewed. *Foster* v. *Taylor*, 5 B. & A., 877 ; *Little* v. *Pool*, 9 B. & C., 192 ; *Wheeler* v. *Russell*, 17 Mass., 258.

It is not necessary to render a contract illegal, that it should be expressly so declared by statute. If a penalty be inflicted, that implies a prohibition. *Rolf* v. *West*, 4 N. H. Rep., 285 ; *Pray* v. *Burbank*, 10 N. H. Rep., 377 ; *Mitchell* v. *Smith*, 1 Bin., 110.

5. The forfeiture of merchandize is as strictly a penalty as the forfeiture of money. So is imprisonment. A penalty is the suffering in person or property, annexed by law to the commission of an offence, and the prohibition is as clearly implied from one penalty as from another ; from the forfeiture of the article illegally sold-or offered for sale, as from the forfeiture of a given sum in money. See the case of *Wheeler* v. *Russell*, supra.

The sale in the case at bar, was in violation of a law enacted for the protection of purchasers, and the very mischief happened which it was the design of the law to prevent, the delivery of shingles utterly worthless.

The Massachusetts statutes, § 156, enact that surveyors of shingles shall be elected in each town. In the absence of proof to the contrary, it is to be presumed there were surveyors of shingles in Newburyport, as the law requires. *State* v. *Daw*, Rockingham, Dec'r term, 1846, which was a prosecution for a military fine. It was objected, that the defendant was warned by a private. *Held*, that a private could warn, only when there was no sergeant, and that in the absence of proof it was to be presumed there were sergeants, because the law requires them.

The 157th section directs what shall be the dimensions and quality of shingles made or offered for sale. The defendant contends that if there had been no further enactment, this action could not be maintained ; for, although it imposes no penalty,

and contains no express prohibition, yet by implication the making or offering for sale shingles not of the statute dimensions and quality is forbidden.

Not following a direction of the statute is equivalent to disobeying a prohibition. *Cape* v. *Rawland; Bensley* v. *Bignold*, before cited.

The 158th section directs how and when shingles shall be surveyed and marked, and then declares, that all shingles offered for sale, not so surveyed and marked, shall be forfeited. The offence is the offer to sell. A sale is not in terms prohibited, but as there can be no sale without an offer to sell, every sale including an offer, it was sufficient to prohibit the offer to sell. If the prohibition had been of a sale or an offer to sell, it would be no broader than now. That point was determined in *Commonwealth* v. *Eaton*, 15 Pick., 573, which was an indictment for selling lottery tickets. The language of the statute was, "If any person shall sell or offer to sell;" the indictment was "did offer for sale and did sell," and it was holden but one offence was charged. *Law* v. *Hodson*, 11 East, 300, was an action for the price of bricks. It was objected, that the bricks were not of the statute dimensions, (17 Geo. III.,) which enacted, that all bricks made for sale, should be, &c., held that the action could not be maintained.

To offer (*offero*; *ob* and *fero :* to bring,) is to bring before; to present for acceptance, or rejection; to exhibit something that may be taken or not. The best evidence of an offer to sell is the sale itself. A dealer in any merchandize offers his stock continually to whomsoever will pay his price, and when a sale is actually effected, the proof would seem to be complete, that the article sold had been offered for sale. The object of the statute was to prevent the sale of worthless shingles, as shingles ; to protect the buyer against fraud on the part of the seller. To accomplish that object, the statute, in the first place, prescribes what lumber shall be known and sold as *shingles*, and further to insure to the buyer shingles in the statute sense of the word, it is enacted, that all shingles shall be surveyed and branded, *before* they are offered for sale, so that the buyer may have re-

liable evidence, that what he is buying for shingles, are shingles. It is like the statute, 17 Geo. III., before referred to, which recites that inconveniences had arisen to the public by frauds committed in lessening the size of bricks without any diminution of price, and for remedy thereof and for the common good and benefit of the subject, enacts that all bricks made for sale, shall be of certain specified dimensions.

Also 1 & 2 Vict., (see *Cundel* v. *Dawson*, 56 Com. Law Rep. 376,) which enacts, that with any quantity of coal delivered in London, there should be delivered a ticket specifying the kind and quality of coals, and signed by the seller.

The case finds that the plaintiff's account, on which this action is founded, is for shingles, *eo nomine;* " 7000 sawed cedar shingles at $1.25 per M. ;" and the case also finds, that in fact they were not shingles in the statute sense of the word, and hardly in any sense, and that they had not the requisite proof that they were shingles, viz : the surveyor's brand. Surely what was actually sold as shingles, in the absence of proof to the contrary, may be presumed to have been offered as shingles, even if the act of selling is not to be regarded as plenary proof of an offer to sell.

It cannot be doubted, that the very mischief has here happened, which the legislature designed to prevent.

In construing statutes, penal as well as others, the proper course is to follow the true intent of the legislature, and to adopt that sense which promotes in the fullest manner the apparent policy and objects of the Legislature. *United States* v. *Winn*, 3 Sum., 209.

Penal statutes are not to be extended by implication, nor are they to be narrowed by construction so as to defeat the purposes for which they are enacted. *Pike* v. *Jenkins*, 12 N. H. Rep., 255 ; *The Emily and the Caroline*, 9 Wheat, 381.

BELL, J. The general principle, that the validity of all contracts, including contracts of sale, is to be· determined by the law of the place of contract, is every where admitted. Certain descriptions of contracts are prohibited either by common law or

statute, and in express terms declared to be illegal, or forbidden to be made. As to such there can be no question. Certain others are not in terms prohibited, or declared illegal or void, but penalties are imposed upon one or both the parties to the contract; and in relation to this class, it has been uniformly held, that the imposition of a penalty implies a prohibition of the act, the doing of which is so punished. *Roby* v. *West*, 4 N. H. Rep., 285; *Gray* v. *Burbank*, 10 N. H. Rep., 377.

The inspection laws of other States, though they may operate unfavorably to our interests, have never been made an exception to the general rule; and contracts, which are either expressly or by implication forbidden by those laws, will be holden illegal. The principles to be applied to the construction of penal statutes, are not in any doubt. All statutes, whether penal or remedial, are to be so construed as to carry into effect the intentions of the legislature. *Fairbanks* v. *Antrim*, 2 N. H. Rep., 105. A penal statute is to be construed strictly; and the courts will not reject any word in it, for the purpose of giving it a broader construction, but they are bound to construe it according to the obvious meaning of the words taken together. *Woodbury* v. *Thompson*, 3 N. H. Rep., 194. The construction is not to be narrowed, but effect is to be given to the plain meaning of the words; and when they are doubtful, that sense is to be adopted, which best harmonizes with the context, and the apparent policy and objects of the legislature. *Pike* v. *Jenkins*, 12 N. H. Rep., 155.

The first question in this case is: Does the statute of Massachusetts render the sale, on which the action is founded, illegal? If the sale is prohibited, it is because a penalty is imposed upon one or both the parties to it. It is said, there can be no difference between a pecuniary penalty and a forfeiture of the article, which is the subject of the transaction; and we think it quite as reasonable to imply a prohibition from the one as the other.

The case recites the statute of Massachusetts. Shingles are required to be of certain dimensions, and to be free of certain defects; and they are required to be surveyed and branded, " before they are sent from the town where they are made, or

at the place of first sale before their delivery." Then comes the penal clause. "All shingles offered for sale without being surveyed and marked as aforesaid, shall be forfeited to the use of the town, where they shall be so offered for sale." Shingles unsurveyed and unmarked *as aforesaid*, if offered for sale, are forfeited. In terms, the statute does not forbid the sale of such shingles, neither is a prohibition of a sale to be inferred, because a penalty is imposed upon such sale, or either of the parties to it. The implied prohibition is not *upon the sale*, but *upon the offer to sell*. These things are not the same. But the argument of the defendant is, that since a forfeiture of the shingles is affixed to the offer of them for sale, and every sale, as he contends, necessarily implies an offer to sell, the offer to sell being impliedly forbidden under a penalty, the sale is necessarily forbidden, because it cannot be made without the prohibited offer. A penalty may be incurred by an offer to sell, where no sale is in fact made. But it is not clear, that an offer to sell is so necessarily implied in a sale, that the prohibition to offer is of course a prohibition to sell. If an offer to sell is not necessarily implied in an actual sale, the whole argument of the defendant falls to the ground. Now as we understand the nature of a sale, an offer to trade, an offer to contract, is necessarily implied in every sale ; but that offer may be either an offer by the seller, or by the buyer ; an offer to purchase, or an offer to sell. The offer to sell is prohibited, for reasons no doubt satisfactory to the legislature, and into which it is no part of the duty of courts to inquire. The offer to buy is not prohibited, for the obvious reason, that a forfeiture of one man's property could not, with any shadow of justice, be made to depend upon the act of another person. The mischief designed to be guarded against by the statute, was the offering for sale of merchandize which had not been duly inspected and marked. If no such offer is made, no statute is violated and no penalty is incurred. The position then on which the defendant relies, that every sale implies an offer to sell, is untrue in fact and his conclusions must fall. He relies upon a *dictum* in *Commonwealth* v. *Eaton*, 15 Pick., 273, that every sale, *ex vi termini*, includes an offer to sell. We think

otherwise. A sale may include an offer to sell, and on that ground an indictment for offering to sell and selling is well enough, because the court will understand them as parts of one transaction and the offer as included in the sale, but it was not necessary in that case to hold, that a sale *always* implied an offer to sell, and the opinion in this respect was entirely extra-judicial.

From the fair and obvious meaning of the language of the statute, beyond which it is not to be strained by construction, we cannot infer, that the legislature intended to prohibit such sales. A very slight change in the language would have made it clearly express what they are thus supposed to mean ; and it is but just to them to suppose they intended just what they said and no more. This conclusion is strengthened by the case in Massachusetts, to which our attention is called. *Wheeler* v. *Russell,* 17 Mass. 258. That case arose upon the statute of 1783, ch. 15, of which the section of the Revised Statutes here relied upon is a revision, but with modifications which we cannot but regard as very essential. By that statute, the sale of shingles not of the statute dimensions and qualities, and of shingles not surveyed, of whatever dimensions or description, was *in terms* prohibited ; and if shingles were sold without being surveyed, *both seller and buyer* were made liable to a pecuniary penalty. Under that statute, it is too clear to be questioned, that no action would lie for the price of shingles sold in violation of the express terms of the law, as well as of the implied prohibition resulting from the penalty inflicted upon both parties to the sale. By the revision, the express prohibition of sales and the penalty upon the buyer and seller are repealed ; while the forfeiture upon the offer to sell was retained. If the legislature intended to continue the prohibition of such sales, why was the statute altered in these respects ? It would be too idle to suppose, they could have intended to leave a point of this kind to implication, while they were striking out brief and apt words for the purpose they are supposed still to retain. This case then is clearly without authority in favor of the defendant, as to the point here involved, while we think, it bears with great force

against the construction he attempts to rest on implication from that part of the original statute which is retained in the revision. As it is clear, that an offer to sell, in the case specified in this statute, is prohibited and illegal, and that an entire transaction, a part of which is illegal, is altogether illegal, it follows that wherever it appears that an illegal offer to sell is a part of a contract of sale, it will render the whole illegal; but this is the essential fact to be proved, in order to avoid the sale. It is not to be inferred from the mere fact of a sale, because the seller may have merely accepted an offer of a third person to purchase an article which he had no previous thought of selling, or wish to sell; and it is absurd to talk of an acceptance as an offer. They are as essentially distinct as a question and an answer. An offer implies something to be done or proposed on the other side; an acceptance of an offer to buy, closes a contract and leaves nothing to be done. In this case there is no evidence that any offer to sell was made by the plaintiff, or that any illegal transaction constituted a part of the sale.

The ruling of the court was correct, in relation to the admissibility of the notice or brief statement. It was a matter of defence, arising after action brought and therefore not admissible under the general issue. If it was admissible, the notice was superfluous. By the general rules, special pleas and brief statements of matters requiring a special plea at common law must be filed within ninety days after the first term. The court may however permit them to be filed afterwards, on payment of costs. No such leave was granted, because the defendant did not choose to submit to the terms the rules impose, and therefore did not ask it.

The defendant tendered to the plaintiff's attorney a sum in full of his claim, less than the amount demanded; the attorney accepted it, but not in full. It is of this payment, (for a tender accepted is a payment,) that the defendant desires to avail himself under the general issue. Under the general issue, the party may avail himself of any payment made *pendente lite,* in reduction of the damages; but as such payment is an admission that the action was brought for good cause, it cannot avail under

the general issue as a bar to the action. If the defendant would avail himself of it as a bar, he must plead it in bar of the further maintenance of the action, or give notice to the same effect by a brief statement filed in conformity to the rules on that subject. *Bailey* v. *March*, 2 N. H. Rep., 522; *Pemigewassett Bank* v. *Brackett*, 4 N. H. Rep., 557.

*Judgment on the Verdict.*